J. and E. Enterprises, Inc. v. Commissioner.
J. & E. Enterprises, Inc. v. Commissioner
Docket No. 6974-65.
United States Tax Court
T.C. Memo 1967-191; 1967 Tax Ct. Memo LEXIS 68; 26 T.C.M. (CCH) 944; T.C.M. (RIA) 67191; October 5, 1967
*68 John C. Hannegan, 926 Clay St., St. Charles, Mo., for the petitioner. Michael J. Christianson, for the respondent. FEATHERSTON
Memorandum Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's income tax for the fiscal year ended September 30, 1964, in the amount of $876.34. The issue presented is whether two sums totaling $3,650 received by petitioner during the tax year in controversy constituted advance rentals to be included in gross income, as determined by the respondent, or non-taxable security deposits, as contended by the petitioner. We agree with respondent. Petitioner is a corporation organized on October 25, 1963 under the laws of Missouri. At the time the petition was filed its principal place of business was 231 Clark Street, St. Charles, Missouri. Petitioner owned a parcel of land on which it constructed both a car wash and a drive-in restaurant. On April 16, 1964, petitioner, as lessor, entered into a business property lease with Ronald O. Mannbeck and St. Charles Auto Wash Inc., as lessees, covering the car wash and the portion of the premises on which it was situated. The lease provided for an annual rental of $6,000 *69 payable in equal monthly installments and covered a term of 120 calendar months from the date of the completion of the construction of the car wash. It gave the lessees an option of renewal for ten years. Paragraph 5 of the lease was as follows: 5. SECURITY DEPOSIT: LESSEES shall, upon the execution of this lease, deposit with the LESSOR as security for the payment of all rent due hereunder the sum of ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500) and one year from the date of the execution of this lease LESSEES shall deposit with LESSOR as security for the payment of all rent due hereunder another sum in the amount of ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500), and which security shall at LESSOR'S option, either be repaid and returned to the LESSEES on the last day of the fifth year of the term of this lease, or applied to the fixed annual rental for the sixth year of said term. Petitioner agreed to insure the building against loss or damage by fire and against losses covered by the usual extended coverage clause. Lessees covenanted to pay assessed taxes on the premises and agreed that if they should fail or neglect to pay the taxes then the petitioner could pay them and the amounts *70 so paid would become due and payable by the lessees to petitioner on the next rental payment date, the amount thereof being considered rent. A failure to pay such taxes by the lessees was to have the legal effects of failure by the lessees to pay rent due under the lease. Lessees further covenanted to maintain plate glass, workmen's compensation, public liability and products liability insurance and fire insurance on the contents of the building and to pay all charges for utilities. Upon completion of the drive-in restaurant and within the tax year ended September 30, 1964, the petitioner, as lessor, entered into a business property lease with Missouri Golden Point, Inc., as lessee, covering the restaurant and the portion of the premises on which it was situated. The lease provided for an annual rental of $4,300 per annum payable in equal monthly installments and covering a term of 240 calendar months from the date of the completion of the construction of the restaurant building. The lease further provided that, if the cost of the construction of the restaurant should exceed $25,000, an amount equal to ten percent of such excess should be added to the annual rent otherwise due under *71 the lease. Petitioner covenanted that it would procure insurance against loss or damage to the building by fire and against losses covered by the usual extended coverage clauses but lessee agreed to pay the petitioner a sum equal to the full amount of the premiums for such insurance. Petitioner covenanted to use the insurance proceeds to restore the building if it should be damaged or destroyed by fire or the elements; if such damage or destruction should occur during the last three years of the term of the lease either the petitioner or the lessee could elect to terminate the lease by giving written notice. Paragraph 5 of the lease was as follows: 5. SECURITY DEPOSIT: Lessee shall, upon the execution of this lease, deposit with the Lessor as security for the payment of all rent due hereunder the sum of Two Thousand One Hundred Fifty (2,150.00) Dollars, and which security shall at Lessor's option, either be repaid and returned to the Lessee on the last day of the Fifty (5th) year of the term of this lease, or applied to the fixed annual rental for the sixth (6th) year of said term. Petitioner agreed to construct the building according to specifications and to "blacktop" the area *72 surrounding the building. Lessee covenanted to maintain plate glass, workmen's compensation, public liability and products liability insurance and fire, extended coverage and vandalism insurance on the contents of the restaurant. The lease contained provisions giving the lessee an option to purchase the building and premises in stated circumstances. Within the tax year ended September 30, 1964, pursuant to Paragraph 5 of the lease covering the car wash petitioner received $1,500 and, pursuant to Paragraph 5 of the restaurant lease, petitioner received $2,150. Petitioner filed its Federal income tax return for such fiscal year and did not report such sums as taxable income but showed them in the balance sheet attached to the return as "unearned rent." On September 28, 1965, a timely statutory notice of deficiency for the fiscal year ended September 30, 1964, was mailed to the petitioner informing it of the respondent's determination that the $3,650 received by petitioner under Paragraph 5 of each of the leases was rental income and was includable in petitioner's gross income for that year. The petitioner has here challenged the correctness of the respondent's determination. All *73 the facts being stipulated, the case was submitted under Rule 30. Petitioner has not favored us with a brief defining its legal position but numerous court decisions have dealt with the question whether sums received by lessors represented advance rentals to be included in gross income or nontaxable security deposits. If a sum is received by a lessor at the beginning of a lease, is subject to his unfettered control, and is to be applied as rent for a subsequent period during the term of the lease, such sum is income in the year of receipt even though in certain circumstances a refund thereof may be required. (C.A. 2, 1944), affirming a Memorandum Opinion of this Court, certiorari denied ; (C.A. 5, 1943), affirming a Memorandum Opinion of this Court; (C.A. 6, 1949), affirming . *74 If, on the other hand, a sum is deposited to secure the lessee's performance under a lease, and is to be returned at the expiration thereof, it is not taxable income even though the fund is deposited with the lessor instead of in escrow and the lessor has temporary use of the money. (C.A. 2, 1940), affirmed . In this situation the acknowledged liability of the lessor to account for the deposited sum on the lessee's performance of the lease covenants prevents the sum from being taxable in the year of receipt. (C.A. 5, 1942). The question of which rule is applicable must be resolved by reference to the intention and conduct of the parties as ascertained from the lease agreement and the related circumstances. ; ; The $3,650 received by the petitioner in *75 the fiscal year ended September 30, 1964, pursuant to the paragraphs numbered 5 in each of the leases here in question was clearly taxable in that year. Neither lease placed any restrictions on the petitioner's use or disposition of the deposited sums. Petitioner was required neither to segregate the payments nor to pay the lessees interest thereon. The circumstances in which repayment of the deposited sums might be required were within the exclusive control of the petitioner since each lease gave petitioner the option as to whether on the last day of the fifth year of the lease the deposited sums would be returned to the lessees or applied to the fixed annual rental for the sixth year. Moreover, the deposited sums purported to secure only lessee's rent and assessed tax payments, none of the other covenants. And the deposited sums did not purport to secure even the rent and taxes for the full terms of the leases, only for the first five years of terms of ten and twenty years, respectively. Thus, the $3,650 received by the petitioner at the beginning of the leases was subject to its unfettered *76 use and control and, at its option, was to be applied on the rent due for a subsequent period. Its predominant characteristics were those of advance rent, not security deposits. Accordingly, it was taxable in the year in which it was received. Decision will be entered for the respondent.